## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARILEE HARNICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:23-cv-01010** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **CLAIBORNE MANAGEMENT LLC d/b/a** | ) | **MAGISTRATE JUDGE FRENSLEY** |
| **CLAIBORNE AND HUGHES HEALTH** | ) | |
| **CENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is Defendant Claiborne Management, LLC d/b/a Claiborne and Hughes Health Center's ("Claiborne") Motion to Stay Case Pending Arbitration, to Compel Arbitration, and to Dismiss the Action for Failure to State a Claim. (Doc. No. 16). Plaintiff Marilee Harnick ("Harnick") filed a response in opposition (Doc. No. 18), and Claiborne filed a reply (Doc. No. 19). For the reasons below, Claiborne's motion (Doc. No. 16) will be **GRANTED** in part and **DENIED** in part.

## I.     FACTUAL BACKGROUND

Marilee Harnick is the daughter and next of kin of Roberta Blatt. (Compl. ¶ 1). Claiborne is a long term care facility. (Compl. ¶ 8). From approximately September 1, 2022, until her death on November 26, 2022, Ms. Blatt was a resident of Claiborne. (Compl. ¶ 7). Harnick alleges that Claiborne was aware that Ms. Blatt was at risk for falls and injuries from falls. (Compl. ¶ 9). Harnick also alleges that Claiborne failed to develop and implement an effective plan for the prevention and timely treatment of falls and injuries from falls. (Compl. ¶ 10). Harnick alleges that Claiborne also failed to implement a system to ensure that Ms. Blatt was properly monitored and protected from acts of abuse and neglect. (Compl. ¶ 11).

Harnick alleges that on November 19, 2022, Ms. Blatt fell and suffered various injuries, including a head injury, delays in care, abuse and neglect, severe pain, and death. (Compl. ¶ 12). Harnick brings claims against Claiborne for negligence and gross negligence regarding Claiborne's care of Ms. Blatt. Claiborne moved to compel arbitration, stay the case pending its submission to arbitration, and dismiss Harnick's claims once all claims have been submitted to the arbitrator under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

In its motion, Claiborne alleges that Howard Harnick, Ms. Blatt's son-in-law, assisted Ms. Blatt in executing her admissions paperwork to the Claiborne facility. (Doc. No. 17 at PageID # 488). Claiborne alleges that as part of the admissions agreement, Harnick executed a voluntary binding arbitration agreement on behalf of Ms. Blatt (the "Agreement"). (*Id.*) Claiborne also alleges that Mr. Harnick was appointed as Ms. Blatt's attorney-in-fact pursuant to a general durable power of attorney executed by Ms. Blatt on or around March 28, 2015 (the "POA"). (Doc. No. 17 at PageID # 492; Doc. No. 16-2). Article I of the POA states that both Marilee Harnick and Howard Harnick shall serve as attorney-in-fact. The POA empowers the attorney-in-fact to "submit to arbitration, settle, and propose or accept a compromise with respect to a claim or litigation" (Doc. No. 16-2 at PageID # 474). Harnick opposes Claiborne's motion on the singular ground that Howard Harnick did not have the authority to sign the Agreement for Ms. Blatt because he was the secondary POA and the primary POA was still acting as the POA.

## II.     STANDARD OF REVIEW

Claiborne seeks dismissal of Harnick's claims in favor of arbitration pursuant to the Federal Arbitration Act ("FAA"). The FAA "allows parties to agree that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 65 (2019); *see also* 9 U.S.C. § 1 *et seq*. Courts must "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v.*

*Italian Colors Rest.*, 570 U.S. 228, 233 (2013). The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "expresses a strong public policy favoring arbitration of a wide class of disputes." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)).

The Court considers the validity of the agreement to arbitrate separate from the validity of the contract as a whole. *See Arnold v. Arnold Corp-Printed Comm. for Business*, 920 F.2d 1269, 1277-78 (6th Cir. 1990) (citing *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)) (stating that arbitration clauses as a matter of federal law are "separable" from the contracts in which they are imbedded). While a general challenge to the enforceability of the contract as a whole must be decided by the arbitrator, a specific challenge to the arbitration agreement itself must be decided by the court before it compels arbitration. *See Anderson v. Charter Comm., Inc.*, 2021 WL 2396231, at *2 (6th Cir. Jun. 11, 2021) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006)). Motions to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Moreover, the FAA provides that when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. *Smith v. Spizzirri*, 601 U.S. 472, 473–74 (2024); 9 U.S.C. § 3.

### III.    ANALYSIS

Whether a binding arbitration agreement exists between the parties turns on the language of the POA (Doc. No. 16-2), which includes a choice-of-law provision in favor of New York law.

3

Under New York law, "[a] court's fundamental objective in interpreting a contract is to determine the parties' intent from the language employed and to fulfill their reasonable expectations." *Silberman v. Farkas*, 179 A.D.3d 1075, 1076, 114 N.Y.S.3d 407 (2020) (internal citation omitted). Moreover, "[a]n unambiguous agreement 'must be enforced according to the plain meaning of its terms.'" *Id.* (internal citation omitted).

Under New York law, "'[i]f the contract is unambiguous, its meaning is [ ] a question of law for the court to decide,' and 'the intent of the parties must be found within the four corners of the contract.'" *Crescent Beach Club LLC v. Indian Harbor Ins. Co.*, 468 F. Supp. 3d 515, 546 (E.D.N.Y. 2020) (internal citation omitted). Thus, in construing a contract under New York law, the Court should look to its language for an agreement that is complete, clear, and unambiguous on its face.[1]

Here, Article I of the POA designates "the following persons, in order of preference and succession, to serve as Attorney-In-Fact" as Ms. Blatt's "Agent" and lists Marilee Harnick first and Howard Harnick second. (Doc. No. 16-2 at PageID # 466). Article III of the POA states that the "successor Agent shall be entitled to act upon the death, disability, or incapacity… or upon the written resignation of the designated prior Agent or under a written delegation of authority by [the] Agent." (Doc. No. 16-2 at PageID # 467). Harnick contends that this language means that she, not Howard Harnick, was Ms. Blatt's Agent and acted as such. Harnick also argues that Howard Harnick was not yet vested with the Power of Attorney as the "secondary attorney-in-fact" and

---

[1] Contract terms are ambiguous if they are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (internal citation omitted). "Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous." *Auburn Custom Millwork, Inc. v. Schmidt & Schmidt, Inc.*, 148 A.D.3d 1527, 1529, 50 N.Y.S.3d 635 (2017) (internal citation omitted). Further, if a Court determines that a contract is ambiguous, "extrinsic or parol evidence may be then permitted to determine the parties' intent as to the meaning of that language." *Dan's Hauling & Demo, Inc. v. GMMM Hickling, LLC*, 193 A.D.3d 1404, 1406, 147 N.Y.S.3d 805 (2021) (internal citation omitted).

4

could not execute the arbitration agreement on Ms. Blatt's behalf and thus, Howard Harnick "did not have the legal authority to bind Ms. Blatt to arbitration, [thus] no valid arbitration agreement exists." (Doc. No. 18 at PageID # 503). Harnick presents no other challenge to the arbitrability of her claims.

The Court finds that the POA is ambiguous. On the one hand, it lists "the following person, in order of preference and succession to serve as Attorney-In-Fact" and identifies Marilee Harnick followed by Howard Harnick. (Doc. No. 16-2 at PageID # 466). Yet, the POA also goes on to identify the powers of the "Agent" and allows for power being vested in a "successor Agent" without having clearly identified a "successor" agent by name, but instead referencing a "prior Agent." (Doc. No. 16-2 at PageID # 467). This language renders itself to more than one reasonable interpretation. One interpretation is that a "successor agent" refers to a successor to Marilee Harnick alone. Another interpretation is that "successor agent" refers to a successor to Marilee Harnick and Howard Harnick, both of whom were identified as the "Agent." A simple and clear designation of "primary" and "successor" next to the names of Plaintiff and Howard Harnick, respectively, would have clarified the meaning of Article III of the POA. Nonetheless, the Court need not guess as to the meaning of the terms within the POA, nor may it rewrite them.

Given the ambiguous language, the Court turns to the conduct of the parties to determine the meaning of the POA. *Alternatives Fed. Credit Union v. Olbios, LLC*, 14 A.D.3d 779, 781 (2005) ("[W]here an ambiguity is present in a contract . . . the subsequent conduct of the parties [may] be used to indicate their intent.").

Harnick alleges that Ms. Blatt was a resident at Claiborne's facility from September 1, 2022, until her death on November 26, 2022. (Compl. ¶ 7). Harnick further alleges that Claiborne owed a duty of care to its residents. (Compl. ¶ 14). Claiborne filed with its motion Ms. Blatt's admission packet related to her becoming a resident of Claiborne's facility on September 9, 2022.

5

Those documents identify Howard Harnick as Ms. Blatt's "legal representative" and are replete with what appears to be Mr. Harnick's signature in that capacity. (*See generally*, Doc. No. 16-1). Those documents suggest that Howard Harnick was acting as Ms. Blatt's attorney-in-fact in September 2022 when the arbitration agreement was signed by him. That conduct clarifies whether Marilee Harnick had the sole power to execute the admissions documents, including the document containing the arbitration agreement; she clearly did not.

Accordingly, given that Harnick's sole argument against enforcement of the arbitration agreement was Howard Harnick's purported lack of authority, Claiborne's motion will be granted in part and denied in part. The Court grants Claiborne's motion to compel arbitration and stay this action pending arbitration. The Court denies Claiborne's request to dismiss this action.

## IV. CONCLUSION

For the reasons stated, Claiborne's motion to stay, compel arbitration, and dismiss the action (Doc. No. 16) is **GRANTED** in part and **DENIED** in part.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

!

6